IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| FORIED JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 116-178 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Foried Jackson appeals the decision of the Acting Commissioner of Social Security denying his application for disability insurance benefits and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.   **BACKGROUND**

Plaintiff applied for insurance benefits and SSI on June 20, 2012, alleging a disability onset date of May 20, 2009. Tr. ("R."), pp. 13, 180. Plaintiff was sixteen years old at his alleged disability onset date and was twenty-one years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 9, 180.

Plaintiff applied for benefits based on allegations of the following conditions: ADHD, behavior problems, and learning disability. R. 228. Plaintiff was in the eleventh grade and

was enrolled in an Individualized Education Program at the time the application was filed. R. 228, 211-20. Prior to his alleged disability, Plaintiff had no past relevant work. R. 228.

The Social Security Administration denied Plaintiff's applications initially, R. 131-33, 134-37, and on reconsideration, R. 141-44, 145-47. Plaintiff requested a hearing before an ALJ, R. 148-50, and the ALJ held a hearing on February 28, 2015. R. 27-73. At the hearing, the ALJ heard testimony from Plaintiff, Bessie Jackson, and Jessie Jackson, Jr., as well as from Robert Brabum, Jr., a Vocational Expert. Id. On April 22, 2015, the ALJ issued an unfavorable decision. R. 9-22.

Applying the sequential process required by 20 C.F.R. §§ 404.1520, 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 20, 2012, the application date (20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.).

2. The claimant has the following severe impairments: ADHD, depression, mood disorder, and borderline intellectual functioning (20 C.F.R. §§ 404.1520(c), 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: performance of only one and two step tasks; work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, and only occasional decision making or changes in the work setting; no driving or operating of motor vehicles as part of job duties; only occasional or superficial interaction with the public; and only occasional interaction with coworkers. The claimant has no past relevant work (20 C.F.R. §§ 404.1565, 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including assembler (household products), packer/packager, and laundry worker (20 C.F.R. §§ 404.1569,

>       404.1569(a), 416.969, 416.969(a)).  Therefore, the claimant was not
>       under a disability, as defined in the Social Security Act, since June 20,
>       2012, the date the application was filed (20 C.F.R. §§ 404.350(a)(5),
>       404.1520(g), 416.920(g)).

R. 15-22.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to develop a full and fair record; and (2) erred in determining Plaintiff's impairments did not meet or medically equal Listing 12.05(C) at step three of the sequential evaluation process. See doc. no. 12 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 13 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

Plaintiff argues the ALJ failed to develop a full and fair record, resulting in an unfavorable decision. Pl.'s Br., p. 4. The Commissioner asserts the ALJ did not need to develop the record further because the record provided substantial evidence supporting his

4

decision. Comm'r's Br., p. 12. As explained below, the ALJ developed the record fully and had sufficient information to render an informed decision.

Plaintiff also argues the ALJ should have found he meets the requirements of Listing 12.05(C) and should therefore be found disabled. Pl.'s Br., p. 5. The Commissioner argues there is substantial evidence to support the ALJ's finding Plaintiff did not meet any listed requirement. Comm'r's Br., p. 4. There is substantial evidence in the record to support the ALJ's finding Plaintiff did not meet or equal a listed impairment. Therefore, neither of Plaintiff's arguments form a valid basis for reversal or remand.

### A. The ALJ Satisfied His Basic Obligation to Develop a Full and Fair Record.

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). This obligation exists "whether or not the applicant is represented," but it "rises to a special duty" where the applicant is not represented by counsel. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985). This special duty requires "a record which shows that the claimant was not prejudiced by lack of counsel." Id. "However, there must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997). For a clear showing of prejudice, a plaintiff must show the record as a whole is incomplete or inadequate. Id.

Plaintiff argues the ALJ did not fully inform him of his right to be represented at the hearing and the consequences of proceeding without counsel. Pl.'s Br., p. 4. Plaintiff claims his waiver of the right to be represented was unknowing due to his intellectual disability. Id. Plaintiff argues the ALJ therefore had a special duty to develop a full and fair record but failed to do so by not considering three exhibits attached to his brief. Id. at 3-4.

The Commissioner argues Plaintiff validly waived his right to representation. Comm'r's Br., p. 11. Furthermore, the Commissioner contends, even if Plaintiff did not waive his right, Plaintiff cannot show prejudice because the ALJ's findings were supported by substantial evidence. Id.

Based on the transcript of the hearing, it is not clear whether Plaintiff's waiver was knowing and voluntary. Brown, 44 F.3d at 935 (finding waiver not knowing and voluntary where applicant "was confused by the ALJ's questions concerning representation"). Before signing the waiver during the hearing, Plaintiff indicated his family had not discussed the waiver with him, and he appeared confused about the nature of representation by an attorney. R. 59-60. The ALJ did not inform Plaintiff of the possible consequences of proceeding without representation by an attorney. However, Plaintiff signed a waiver of representation, after receiving information about his right to representation in his notice of hearing. R. 170, 157-58.

Even if Plaintiff's waiver was not knowing and voluntary, Plaintiff will not be able to show prejudice because the record as a whole was complete and adequate. Graham, 129 F.3d at 1423 (holding clear showing of prejudice required before remand necessary). Plaintiff argues the ALJ should have considered: (1) medical records from American Works, Inc., created from May 18, 2015, to November 20, 2015; (2) records from Augusta Center for

Psychological Services, P.C., from June 5, 2000, to January 13, 2006; and (3) records of Plaintiff's academic performance from the Richmond County School System. Pl.'s Br., pp. 3-4. As the Commissioner contends, however, the absence of these records does not render the record incomplete or inadequate. Comm'r's Br., pp. 12-13.

The records from American Works, Inc., were created after the ALJ issued his decision. (Doc. no. 12-1); R. 9. The records from Augusta Center for Psychological Services, P.C., cover Plaintiff from ages seven to twelve years, and Plaintiff was nineteen at the time of his application. R. 180. Thus, these older records are less relevant to Plaintiff's condition and abilities than the more recent opinions and records relied upon by the ALJ. See 20 C.F.R. § 416.203(b) ("We determine that you are eligible for SSI benefits for a given month if you meet the requirements . . . in that month.").

Finally, the records from the Richmond County School System contain information already present in his Individualized Education Program ("IED") assessment and testimony at the hearing. R. 53-54, 211-220. The twelve pages of records offered by Plaintiff contain only standardized test data and course grades. (Doc. no. 12-3.) The IED assessment summarized Plaintiff's academic performance during the same period in addition to providing a detailed assessment of Plaintiff's intelligence and learning problems. R. 211-220. Furthermore, the record already documents Plaintiff was in special education and received a Certificate of Performance rather than a diploma. R. 54, 228. This, when combined with the three expert opinions and examples of daily activities, is a sufficient record.

Plaintiff is unable to show he was prejudiced by a lack of representation in this case. The ALJ developed an adequate and complete record, which was a sufficient basis for his

decision in this case. Thus, Plaintiff is not entitled to reversal and remand based on failure to adequately develop the record. Graham, 129 F.3d at 1423.

### B. Plaintiff Failed to Establish Disability Under the Listings.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

An ALJ's finding as to whether a claimant meets a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding ALJ implicitly found claimant did not meet Listing because it was clear form record ALJ considered relevant law and evidence). Furthermore, although an ALJ must consider the Listings in the disability determination, the ALJ is not required to mechanically recite the evidence leading to the ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F.

App'x. 917, 920 (11th Cir. 2015); Popham v. Colvin, No. 2:14-CV-157, 2016 WL 3004661, at *5 (S.D. Ga. May 24, 2016), report and recommendation adopted, No. 2:14-CV-157, 2016 WL 3453426 (S.D. Ga. June 17, 2016), aff'd sub nom. Popham v. Acting Comm'r of Soc. Sec., No. 16-14077, 2017 WL 765773 (11th Cir. Feb. 28, 2017).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (*per curiam*); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criteria of 12.05(C) are met when "[there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, a claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff must show the impairment "significantly limits [his] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No.

9

5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A)).

Plaintiff claims the ALJ erred in evaluating his impairments under 12.05(C) because the ALJ was dismissive of Plaintiff's IQ scores and failed to consider the records from American Works, Inc., Augusta Center for Psychological Servcies, P.C., and Richmond County School System. Pl.'s Br., pp. 3-4. The ALJ recognized Plaintiff received a full-scale IQ score of 61 but determined Plaintiff did not have the requisite deficits in adaptive functioning to meet the C criteria "for any section of the mental Listing of Impairments." R. 15, 18. In support of this finding, the ALJ relied on the opinions of psychologists Dr. M. Kevin Turner, Dr. Joseph Garmon, Dr. George Hughes, and Plaintiff's activities of daily living. R. 18-20.

The Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5). However, SSR 96-6p provides findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 416.927(d).

The ALJ properly relied on the opinions of the state agency experts, Dr. Joseph Garmon and Dr. George Hughes, to determine a diagnosis of borderline intellectual functioning was appropriate for Plaintiff. R. 19-20. On September 18, 2012, Dr. Garmon reviewed the record, including Dr. Turner's report, to assess the severity of Plaintiff's impairments for the state agency. R. 75-98. Dr. Garmon diagnosed Plaintiff with severe oppositional and defiant disorders and severe borderline intellectual functioning. R. 80, 92. However, Dr. Garmon found only moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 81, 93. Furthermore, Dr. Garmon reviewed Dr. Turner's exam and agreed Plaintiff's IQ score was not an accurate reflection of Plaintiff's abilities. R. 81, 93. Dr. Garmon also noted Plaintiff's activities of daily living, which include cleaning, playing music, playing sports, dancing, and cooking, were more consistent with borderline intellectual functioning. Id.

The record was independently reconsidered by Dr. George Hughes on March 7, 2013. R. 101-28. Dr. Hughes also diagnosed Plaintiff with borderline intellectual functioning based on his functional abilities. R. 107, 108, 121, 122. Because Dr. Garmon and Dr. Hughes referenced specific evidence to support their conclusions, which were consistent with the record, the ALJ properly gave their opinions great weight. R. 19-20.

Dr. Turner, a one-time examining psychologist, evaluated Plaintiff on September 7, 2012. R. 407. Dr. Turner evaluated Plaintiff's IQ, and Plaintiff received a full scale IQ score of 61. R. 410. Dr. Turner opined the score was a slight underestimation of Plaintiff's true abilities due to current medications and lack of sleep. Id. Dr. Turner diagnosed Plaintiff with oppositional defiant disorder and mild mental retardation. R. 411. Dr. Turner stated Plaintiff would have mild to moderate limitations interacting with coworkers, supervisors, and the general public;

moderate limitation in concentration, persistence, or pace; and moderate limitations in coping with normal work-related stressors. R. 18, 411.

Plaintiff claims the ALJ did not give due weight to the IQ scores determined by Dr. Turner. Pl.'s Br., p. 4. While the ALJ noted Dr. Turner was a one-time examining psychologist, the ALJ gave "considerable weight" to Dr. Turner's opinion. R. 18. The ALJ also noted the IQ score was questioned even by Dr. Turner, who believed the score underestimated Plaintiff's abilities. R. 18, 410. There is no evidence the ALJ disregarded Dr. Turner's opinion or substituted his own opinions for those of Dr. Turner.

The ALJ also examined Plaintiff's activities of daily living, as evidenced by Plaintiff in two function reports and a disability report. R. 20, 247-54, 276-83, 301-07. In the first function report completed in June 2012, Plaintiff indicated he could read, write, follow instructions, and pay attention for two to three hours. R. 227, 252. Plaintiff also stated he had no problems with personal care, could prepare meals, do chores and yard work, ride a bicycle, shop for himself, pay bills, and count change. R. 248-50. His hobbies were rapping, dancing, and playing sports. R. 251.

In a second function report dated January 27, 2013, Plaintiff indicated he needed to be reminded to take care of his personal needs, could not handle money, and could not pay attention very long. R. 276-83. However, Plaintiff stated he could prepare his own meals, do chores, shop for himself, and engage in social activities and hobbies. Id.

In sum, substantial evidence supports the ALJ's finding Plaintiff did not satisfy Listing 12.05(C), despite the existence of a full-scale IQ score of 61. Dr. Garmon and Dr. Hughes diagnosed Plaintiff with borderline intellectual functioning, which is mutually exclusive of intellectual disability. See Jordan v. Comm'r of Soc. Sec., 470 F. App'x 766, 768-69 (11th

Cir. 2012) (noting claimant's diagnosis of borderline intellectual functioning, which is "mutually exclusive of mental retardation" supported conclusion claimant's impairments did not meet Listing 12.05). The ALJ gave great weight to these opinions while considering the opinion of Dr. Turner and additional evidence in the record in making its determination. In sum, the ALJ's weighing of the medical opinions is supported by substantial evidence.

Furthermore, the ALJ thoroughly evaluated Plaintiff's daily activities of living and properly concluded Plaintiff did not have deficits in adaptive functioning. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion plaintiff did not meet Listing 12.05(C) despite IQ in required range due to plaintiff's work experience and daily living activities); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (N.D. Ala. July 25, 2008) (relying on medical opinion adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05(C)).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 27th day of October, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA